All right, sorry for the delay. When you're ready, counsel. Good morning. If it pleases the court, my name is Gregory Bartalme. I'm representing Mr. Anderson. I'd like to address a couple of points, but first lay out very briefly the chronology of events because I think they're very important in this particular case. We had a change of plea that took place on May 3rd of 2004, and this is the time period where there's significant changes brewing in the law. It was at that change of plea and during the colloquy where the court told the appellant that the court must sentence you to a term of imprisonment within the guideline range and then explain the departure and other enhancements and things like that. Clearly, everyone in the court was proceeding at that time, at the change of plea, under the assumptions correctly at the time that the guidelines were mandatory. Two months after the change of plea, we had the decision in Blakely. Two months after that, we had the – then on July 1st, rather, one month after that, we had Ameline 1. And then it was on September 27th of 2004 that we had the sentencing hearing. Written objections were filed prior to the sentencing hearing by appellant's trial counsel, and the government had an opportunity to respond and did so in writing. Well, I want to direct your attention to first on just take me through this. Is there any evidence in the record that your client did not understand the scope of the appellate waiver at the time he entered the plea agreement? At the time he entered the plea agreement? At the time. First, I want to start there. I can't say that there is, Judge. Okay. So that being the case, I'm aware of the statement that was made later by the court about you can always appeal in a legal sentence, which was made, what, a couple months later, I guess? That's correct. How can you distinguish your client's case from United States v. Floyd? Judge, I really can't. I don't believe I have that case in front of me at this time, and I'm not familiar with the particular facts. But if we're dealing solely with the time of the change of plea and then move forward in time and you have trial counsel advising the client of what is happening with regards to preparing for the sentencing process, you have then these changes in the law. And if you can't address Floyd, then I know that we have U.S. v. Cardenas. Are you familiar with that case? Not offhand, Judge. Okay. Because that addresses the argument where, as a part of the general waiver of appellate rights that was entered into as part of a pre-Booker plea bargain, that it precludes a defendant from bringing a Booker claim on appeal. So Cardenas, that particular case seems to sink that argument. Well, I understand, Judge. But the reliance that we're placing on is the representations that happened in this particular case in terms of the pronouncements by the judge to the defendant. That's where the focus has been and why the appellant chose to appeal. It was those oral pronouncements at sentencing that he relied upon. And actually, even before we got to the sentencing hearing, in the course of preparing for the objections, the understanding was that Blakely preserved his right to appeal because there were now issues regarding what the sentencing court could and could not consider at the time of sentencing and whether certain enhancements would apply. So when we get to the sentencing hearing, we have those pronouncements. And the trial attorney did everything she could at that point to preserve the Sixth Amendment claim. And, in fact, when the judge reaches the point of saying, well, essentially there's nothing else that needs to be addressed with regards to appeal and so forth, she says, yes, Judge, except in the Blakely arguments. So in essence, she was doing everything she could. And in response to that comment, the sentencing judge said that you never waive your right to appeal an illegal sentence, effectively advising appellant directly that he had a right to appeal. Now, how did that affect his ‑‑ I mean, what did he rely on? It may have encouraged you to make this appeal, but how did it affect what he did earlier when he waived it? Because at the point in time, the law is that he's allowed to rely on the oral pronouncements of the sentencing judge. But what reliance here, he's told that by the judge, but what conduct of his resulted? Well, the change in the law with regards to Blakely and then Ameline had confused a lot of people. But once the judge makes that statement, what does your client do that is different? My client at that point doesn't necessarily do anything except think that if the sentence imposes an illegal one, and I'm sure he would rely on trial counsel, then he would have that right to appeal. And this is where the silence by the government comes into play, because the government did not object when that pronouncement was made. Well, here's the problem with Floyd, though. I mean, Floyd basically addresses that an oral pronouncement can overcome a written waiver only if the pronouncement was made contemporaneously with the waiver itself. And, you know, Floyd held that a defendant's waiver of his right to appeal in his plea agreement precludes him from appealing despite oral statements made at a subsequent hearing. The stated rationale for this holding is that a non-contemporaneous statement cannot relate back to the time that the plea was made. So that's why I'm asking you about Floyd, because those are the facts that we have here. I think you have to somehow overcome that. I understand, Judge. The only response I can make is that the uniqueness of what was occurring at the time, which is why I started it by just giving the brief dates of when the case was, when the tangent plea was entered and when the sentencing hearing was held, it was everyone's understanding that he would be able to appeal. And my guess is to the extent that the government's silence after the pronouncement by the court can be taken as assent, then I think everyone's understanding was that he, in fact, had that right. So I can't square it other than to say the government's going to get up here today and say they have the same understanding that you do, because that would be everyone. I don't think that's what's going to happen, Judge, but they didn't raise the issue until the appeal was actually filed. And I certainly ---- That's correct. That's correct. And I think they certainly had an opportunity to do so, and they had other options as well. They could have requested a postponement. They could have renegotiated the terms of the plea. But if they just said that's just not true, how would that have changed the ---- I mean, we still have to go back to the original waiver. That brings us back to the Buchanan situation, though, where the court said that based upon the oral pronouncement, a defendant has a reasonable expectation that what the judge is telling him is something that he can rely on. And that differs from the Shuman case where there was an objection, in which case the court said, no, now you don't have a reasonable expectation because now you have been put on notice. So essentially, as I indicated before, I think that silence by the government was, in essence, an assent. I also think that, well, the government also recently submitted a 28-J letter with regards to Cortez Arias, which I was able to review. And we don't read the case the same way at all. Cortez Arias had to do with the shooting of an inhabitant dwelling and whether or not that was a crime of violence under the California Code and so forth. He filed an objection in the district court and was overruled. And the court examined it in terms of whether or not crime of violence fit the particular terms of 2L1.2 and, in fact, held that it did. And the amended opinion dealt with the waiver issue and the fact that he had waived everything basically without reservation, except for the interpretation of the term crime of violence. And this court did not think that a remand was appropriate. But in our case, we preserved the issue as was seen at the time, the trial counsel did, which was a Sixth Amendment claim. And that was not done in Cortez Arias. There was no judicial pronouncement issue, no reasonable reliance issue, and there was no acquiescence issue by the government. So, in essence, we see that case, which they recently cited as being inopposite and not exactly relevant to our case. Now, the issue, as far as we're concerned, is the calculations of the guidelines so that we can get at what was the proper base level, since that's so important to the defendant, because the plea agreement allows for him to receive or required him to receive the mandatory minimum once that determination was made. It was the appellant's position that that determination was not properly made, and that is why the appeal was here. The judge adopted the pre-sentence report in its entirety. He did not require the prosecutor to present any evidence before he did so, and that pre-sentence report included all of the enhancements, although to the government's credit, they did, in fact, make an offer to present testimony, but that offer was rejected. Roberts. Your time has expired. We'll give you one minute of rebuttal, but let's hear from the government. I'm sorry. Thank you. It's not your fault. May it please the Court, good morning. My name is Emory Hurley from the United States Attorney's Office for the District of Arizona, representing the appellee in this case. Your Honors, in this case, there was a valid waiver executed during the change of plea proceedings which occurred on March the 3rd of 2004. Sentencing did not take place until September the 27th of 2004, at which point at the tail end of the sentencing proceedings, the district court judge did not tell the defendant he had an unqualified right to appeal any aspect of the prosecution. The defense made the comment that after the judge went through the waiver language and said to the parties that he believed that he had sentenced the defendant in conformance with the plea agreement, thus rendering the waiver completely valid, and that he had waived any right to take up any issue regarding the prosecution, the defense. Just said a little bit extra. I'm sorry, Your Honor. The judge went through, though, the judge went through the waiver language and said that he believed the defendant had waived his right to appeal. He had sentenced the defendant in conformance with the plea agreement. It was then that the defense attorney said, except with regard to Blakeley issues, he can still appeal. And the judge didn't say even, he didn't even make the agreement, yes, you can still appeal Blakeley issues. The judge said simply, you can always appeal an unlawful sentence. The government did not object to this statement, since this is a correct statement of the law. A defendant can always appeal an unlawful sentence. But an unlawful sentence But, of course, that can't be right. Your Honor. If he's got a plea waiver, that statement's wrong. Your Honor, the defendant would still be, for the purposes of appealing, even in light of a plea waiver. A defendant would still be able to appeal a sentence if the sentence is illegal to the extent that it is either exceeds the statutory maximum. But now you're saying something different from what the judge said. Well, Your Honor, the judge said that you can always appeal an unlawful sentence, and an unlawful sentence with regard to waiver language has a very specific meaning. A sentence that exceeds the statutory maximum, a sentence that is the result of racial disparity between co-defendants, a sentence that violates the terms of the plea agreement. I understand those things. And the judge didn't say that. But what the judge said may not be either here or there, given that this is said at this later time, not at the time that he enters into the waiver. That is also correct, Your Honor. The facts of this case are far different than the Buchanan case on which the defendant relies. It was in the Buchanan case that the judge's comment was made contemporaneous with the execution of an amendment to the plea agreement. The defendant in Buchanan was first entered into the plea agreement September of 1993. On his January 4, 1994, sentencing date, there was a discussion about whether or not he could withdraw from the plea, and he evinced a desire to withdraw from the plea. The judge then had a conversation with him about the fact that he could always appeal the court's sentencing findings and gave the parties more time to work out some sort of an agreement. On January 20th, the parties filed an amendment to the plea agreement, and on the 21st of January, he went through with his sentencing, and again the judge made the same sweeping comment that the defendant had the right to appeal. There, the court's comments don't have to relate back to the time of the waiver. They were contemporaneous with the time of the waiver. What we have in the instant case is a situation very much like Floyd or like Lopez-Armenta, where the sentencing takes place months after the execution of the waiver, and the court's comments cannot possibly create any confusion in the mind of the defendant that relates to whether he should execute the waiver or not. The defense, Your Honor, cited in their reply brief the case of Ortega-Ascanio, pardon me, which is an apposite to the case at bar. That case addresses simply the standard for a court to consider a request to withdraw from a plea after the plea has been taken but before sentencing takes place. It has nothing to do with the facts at hand. In this case, the defendant did not make any effort to withdraw from the plea. It is clear at the time of his sentencing that there was no reliance at all upon any of the judge's comments regarding the availability of waiver. Your Honor, if we get to the merits of the case itself, the defendant's sentence was established by his base offense level, which did not involve any judicial fact-finding at all. It had to do with simply the fact that he was a felon in possession, which establishes his base offense level. And his actual sentencing range was established by the fact that he had a number of prior criminal convictions. His prior convictions are properly found by the sentencing judge. Those are the only things that enhanced his sentence. In fact, the plea agreement specified that he would not get an enhancement for the firearm being stolen and that he would in fact get a sentence at the bottom of the guideline range, and that was a stipulated sentence. The judge accepted the plea agreement and sentenced him in accordance with it, giving him a sentence at the bottom of the guideline range. Your Honor, this appeal shouldn't have been brought because the defendant did in fact waive his right to appeal all aspects of the prosecution, including his sentence. Even if the court reaches the merits of the case, the defendant was still properly sentenced with his sentence being a stipulated sentence to the bottom of the range. If the judge were to do it over again, the district court judge, if he accepts the plea agreement as he had, would once again sentence the defendant to the bottom of the range. For these reasons, Your Honor, the United States would ask that the conviction be affirmed and the sentence be affirmed. Thank you. One minute if you need it. Thank you, Judge. The enhancements, there were enhancements that were part of the sentence, and the enhancements were significant. And trial counsel argued that what the court should have done in light of the state of the law at that time was to impose one point for each prior criminal conviction, and that would have been in line with Apprendi and Almendarez-Torres. That was the proposal, but instead the judge, without taking any evidence and without requiring the prosecution to prove any of the enhancements, simply took the PSR and imposed all of the enhancements going from a Category 3 to a Category 6. So we think that that was significant, and the defendant, the appellant, is not asking to get out of the plea agreement, but we just think that the calculation was improperly done. Okay. Thank you. Thank both sides for their argument. United States v. Anderson is now submitted for decision.
judges: Noonan, W. Fletcher, Callahan